**NIGHTCLUB MANAGEMENT, LTD.; Lounge Management, Ltd.; Daneika Glen, Nikolle Guion, and Jane Doe, Plaintiffs,**

v.

**CITY OF CANNON FALLS, Defendant.**

No. CIV.98–2370(JRT/FLN).

United States District Court, D. Minnesota.

April 19, 2000.

**1028**

Randall D.B. Tigue, Law Office, Minneapolis, MN, for plaintiffs.

Elliott B. Knetsch and Andrea McDowell Poehler, Campbell Knutson, Eagan, MN, for defendant.

## MEMORANDUM OPINION AND ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

TUNHEIM, District Judge.

This case involves the constitutionality of a city's attempt to regulate a nude dancing establishment. The Court recognizes that regulation of such businesses is clearly permissible and appropriate under the law, and respects defendant's desire to protect its residents from the unwanted side effects of crime, prostitution, and declining neighborhoods that can accompany such businesses. Nonetheless, the Supreme Court has established specific standards that are necessary to render such regulation constitutionally valid, and the Court concludes that in one respect, defendant's efforts have fallen short of the mark.

Plaintiff Nightclub Management, Ltd. operates Class Act, a nude dancing establishment located in defendant City of Cannon Falls ("the City"). Plaintiffs Daneika Glen, Nikolle Guion, and Jane Doe are

dancers at Class Act. Plaintiff Lounge Management, Ltd. operates Peeler's Bar, which is located in the same building as Class Act. Collectively, plaintiffs challenge the constitutionality of the City's sexually oriented business licensing and public indecency ordinances. Plaintiffs also challenge the City's attempt to require them to comply with the City's liquor license regulations, which prohibit the issuance of new liquor licenses to anything but restaurants.[1] Both sides seek summary judgment on plaintiffs' claims. For the reasons set forth below, the Court finds that the licensing ordinance fails to provide adequate procedural safeguards, rejects plaintiffs' challenge to the public nudity ordinance, and holds that plaintiffs need not comply with the restaurant requirement.

## BACKGROUND

Prior to July 1998, the building housing Class Act and Peeler's Bar was located in an unincorporated area of Cannon Falls Township in Goodhue County, Minnesota, outside the geographical boundaries of the City. In July 1998, however, the City annexed the territory on which these businesses are located. Prior to this annexation, there were no nude dancing establishments in the City.

Knowing that it was about to annex property containing a sexually oriented business, the City endeavored to determine the proper means of zoning and regulating such businesses. On November 20, 1997, the City Council adopted a resolution directing the Planning Commission to study the issue of zoning and appropriate regulations. The scope of the study was to include the effect of adult establishments on other zoning uses. In connection with its study, the Commission reviewed studies conducted in other communities and noted that these communities had concluded that increased crime and reduced property values usually accompany adult businesses. The Commission also reviewed a proposed zoning ordinance and a 1989 report conducted by the state Attorney General. This report considered evidence relating to the effects of adult businesses from other cities, including Minneapolis, St. Paul, Phoenix, and Indianapolis.

On February 19, 1998, the City Council adopted a resolution setting forth findings of fact regarding the impact of adult businesses on crime rates and property values. The City Council found that the cities cited in the various reports are sufficiently similar to the City such that the evidence of those cities' experiences with adult businesses is relevant to determining the propriety of regulating such businesses in the City. Based on the experiences of the cities as set forth in the Attorney General's report and the other studies it reviewed, the City Council further found that sexually oriented businesses have the potential to create adverse secondary effects within the City and that regulation is necessary to minimize the potential adverse secondary effects associated with such businesses.

On September 3, 1998, the City Council adopted Ordinance No. 188 (the "licensing ordinance"), which defines and establishes criteria for licensing sexually oriented businesses, and Ordinance No. 189, which establishes zoning regulations for sexually oriented businesses. Two months later, on November 5, 1998, the City Council

---

1. Plaintiffs' complaint also challenges two other grounds for the denial of a liquor license: the limit on the total number of licenses in the city, and the proximity of Peeler's Bar to a sexually oriented business. Both sides agree that these claims are now moot, because the city amended the ordinance to accommodate plaintiffs' license and subsequently issued the license.

Defendant asserted a counterclaim that is essentially the obverse of plaintiffs' claims, seeking a declaratory judgment that the various ordinances are facially constitutional and constitutional as applied to plaintiffs and enjoining plaintiffs from violating them. Because the counterclaim raises the same issues and the parties have not addressed whether defendant is entitled to such relief, the Court will dismiss it without prejudice.

adopted Ordinance No. 195 (the "public nudity ordinance"), which, among other restrictions, prohibits persons from knowingly and intentionally appearing in a state of nudity[2] in a public setting or place except as part of "any theatrical production performed in a theater by a professional or amateur theatrical or musical company which has serious artistic merit." Cannon Falls, Minn., Ordinance No. 195 § 1, subd. 5.

The licensing ordinance defines "sexually oriented businesses" to include, *inter alia,* "sexually oriented cabarets." Cannon Falls, Minn., Ordinance No. 188 § 1. Such a cabaret, in turn, is defined as a "nightclub, bar, restaurant, or similar commercial establishment which regularly features: (A) Persons who appear in a state of nudity; or (B) Live performances which are characterized by the exposure of 'specified anatomical areas' or by 'specified sexual activities' ...."[3] *Id.* Under the licensing ordinance, sexually oriented businesses must obtain a license in order to operate. *See* Ordinance No. 188 § 3, subd. 3. Plaintiffs do not dispute that Class Act qualifies as a sexually oriented business and must obtain a license and otherwise comply with the terms of the ordinance.

Potential licensees must submit an application on a form provided by the City Administrator, who thereafter must approve the issuance of a license within thirty days after receiving a complete application unless he finds one of ten conditions specifically enumerated in the ordinance. *See* Ordinance No. 188 § 3, subd. 4. If the City Administrator denies a license, the aggrieved party may file an appeal with the City Council within ten days of receiving notice. *See* Ordinance No. 188 § 3, subd. 10. An appeal to the City Council "stays the action of the City Administrator in requiring, suspending or revoking a license until the City Council makes a final decision." *Id.* The licensing ordinance also sets forth general restrictions applicable to sexually oriented businesses.

The City's liquor license regulations prohibit the issuance of an "initial license" to an establishment that is not a restaurant. *See* Cannon Falls, Minn., Code § 5.45. The regulations define "restaurant" quite specifically, down to the number of meals it must serve per day, the type and variety of food which must be offered, and the hours during which food is to be served. *See* § 5.45, subd. 4. Liquor establishments that held a valid license on January 3, 1986, the effective date of this regulation, are exempt from the restaurant requirement so long as they do not allow their licenses to expire without timely filing an application for renewal. *See* § 5.45, subd. 3. There is no dispute that on January 3, 1986, Peeler's Bar, which was then known as Dick's Place, held a Goodhue County liquor license and has been continuously licensed ever since.

## ANALYSIS

### A. Standard of Review

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c). Only disputes over facts that might affect the outcome of the suit under the governing substantive law will properly preclude the entry of summary judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, a court is required to view the facts in a light most favorable to the nonmoving party. *See*

---

2. The public nudity ordinance defines "nudity" as "(1) The appearance of a human bare buttock, anus, male genitals, female genitals, or female breasts; or (2) A state of dress which fails to opaquely cover a human buttock, anus, male genitals, female genitals, or areola of the female breast."

3. The ordinance further defines the terms "specified anatomical areas" and "specified sexual activities."

*Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods, Inc.,* 824 F.2d 582, 585 (8th Cir.1987). Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## B. The Licensing Ordinance

### 1. Content–Based Regulation

Plaintiffs first attack the ordinance on the ground that it is a pretext for content-based discrimination in violation of the First Amendment. Plaintiffs offer evidence that in crafting the ordinance, the City relied on materials from the National Family Legal Foundation, which plaintiffs characterize as a "religious right organization dedicated to the total censorship of sexual speech." Plaintiffs further argue that the restrictive provisions of the ordinance itself, combined with the fact that the ordinance is aimed only at sexually oriented businesses, demonstrates that the City's only motive is to censor sexually explicit speech.

The Court doubts that an alleged illicit motive on the part of the enacting legislators could, all by itself, suffice to invalidate an otherwise valid law on First Amendment grounds. Time and again, and most recently in *City of Erie v. Pap's A.M.,* the Supreme Court has reiterated that courts "will not strike down an otherwise constitutional statute on the basis of an alleged illicit motive." *City of Erie v. Pap's A.M.,* — U.S. ——, 120 S.Ct. 1382, 1392, 146 L.Ed.2d 265 (2000) (citing *United States v. O'Brien,* 391 U.S. 367, 382–83, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968) and *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 47–48, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986)). Plaintiffs rely on *Church of*

*The Lukumi Babalu Aye, Inc. v. City of Hialeah* for the proposition that the motives of the enacting legislature are relevant. *See* 508 U.S. 520, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993). In that case, however, as plaintiffs themselves note, the discriminatory motive was evident from the face of the ordinance itself, because nearly the only conduct it prohibited was religious conduct. *See id.* at 535, 113 S.Ct. 2217. *Lukumi Babalu* does not, therefore, establish that an otherwise valid law is invalid solely because the legislators harbored improper motives.

■■■ Even assuming that plaintiffs are correct, however, the crucial difference between this case and *Lukumi Babalu* is that here there is nothing particularly pernicious about the fact that the City specifically targeted nude dancing establishments. In *City of Renton,* the Supreme Court held that regulations directed only at sexually oriented businesses are considered content-neutral if their purpose is to curb the undesirable secondary effects of the businesses. *See* 475 U.S. at 47–50, 106 S.Ct. 925. At best, plaintiffs have demonstrated that the City targeted sexually oriented businesses. But this no more proves that the City intended to censor sexually explicit speech than it proves that the City desired to combat the adverse secondary effects associated with nude dancing establishments. *See Ambassador Books & Video, Inc. v. City of Little Rock,* 20 F.3d 858, 863 (8th Cir.1994) ("The fact that the ordinance covers only a particular category of businesses—those that are sexually oriented—does not make it content based."). Nor does the City's use of materials from the National Family Legal Foundation demonstrate that the City's true motive is to suppress speech. The Court rejects plaintiffs' suggestion that the motives of an organization willing to offer free legal advice should be imputed to a city's legislators simply because they choose to accept the advice. If a law is to be invalidated on the basis of the legislature's improper motives, only the "clearest

proof" will suffice to establish those motives, *Ambassador Books*, 20 F.3d at 863 (quoting *Flemming v. Nestor*, 363 U.S. 603, 617, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960)), and the fact that the City had materials on hand from a "religious right" organization does not meet this standard, *cf. Schultz v. City of Cumberland*, 26 F.Supp.2d 1128, 1141–42 (W.D.Wis.1998) (rejecting the plaintiffs' argument that the city's reliance on a model ordinance drafted by the National Family Legal Foundation rendered the ordinance discriminatory). Even if this organization's motives could be imputed to the City, however, the materials plaintiffs provide simply demonstrate that the National Family Legal Foundation is concerned about the effects of sexually oriented businesses on the surrounding community and favors the strictest regulation possible. This is entirely consistent with a plainly permissible motive to combat negative secondary effects.

■ The Court similarly finds unpersuasive plaintiffs' argument that the stringency of the regulations themselves establishes that the City desires to censor speech. While overly stringent regulation could be invalid for other reasons, such as that it fails to leave open reasonable alternative means of communication, *see City of Renton*, 475 U.S. at 50, 106 S.Ct. 925, in this context, where the City has an interest in targeting plaintiffs' business that is unrelated to the suppression of speech, the mere fact that the City's regulations are strict does not establish that the City's motives have strayed from the proper to the forbidden. Accordingly, the Court rejects plaintiffs' argument that the ordinance is an invalid content-based restriction on speech.

### 2. Prior Restraint

Plaintiffs next challenge the ordinance, and a number of its substantive provisions, as unconstitutional prior restraints on speech. Specifically, plaintiffs challenge the following provisions of the ordinance: the requirement that dancers remain at least ten feet from patrons on a stage elevated at least two feet off the floor; the prohibition against tipping dancers; the requirement that applicants obtain building and fire inspections prior to licensure; the prohibition against licensure of anyone delinquent in taxes or fines; the disqualification based on prior license revocations and criminal convictions; the amount of the licensing fee; the disqualification based on a demonstrated failure to maintain a sexually oriented business in a "peaceful and law-abiding manner"; and the requirement that applicants provide all information "reasonably necessary" for issuance of a license. With the exception of the latter two provisions, which appear to grant excessive discretion to the City, plaintiffs' challenges to the substantive provisions of the licensing ordinance appear meritless. The Court need not resolve these specific challenges, however, because it concludes that the ordinance as a whole fails to satisfy the procedural safeguards applicable to prior restraints. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990).

■ By virtue of the First Amendment, any system of prior restraint on speech comes to court bearing a "heavy presumption" against its validity. *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963). In *Freedman v. Maryland*, the Supreme Court held that such a system is nevertheless permissible under the First Amendment, so long as it provides for adequate procedural safeguards. *See* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). *Freedman* involved a state censorship statute, pursuant to which persons wishing to exhibit films had first to submit them to a state board of censors. *See id.* at 52, 85 S.Ct. 734. The Supreme Court held that the statute was an invalid prior restraint on speech because it lacked three required procedural safeguards. *See id.* at 58–60, 85 S.Ct. 734. Those safeguards are as follows: "(1) any restraint prior to judicial review can be imposed only for a specified brief period during

which the status quo must be maintained; (2) expeditious judicial review of that decision must be available; and (3) the censor must bear the burden of going to court to suppress the speech and must bear the burden of proof once in court." *FW/PBS,* 493 U.S. at 227, 110 S.Ct. 596 (plurality opinion) (citing *Freedman,* 380 U.S. at 58–60, 85 S.Ct. 734).

In *FW/PBS,* a majority of the Court concluded that at least two of *Freedman's* procedural safeguards are required in order to validate a scheme for licensing businesses that traffic in sexually oriented speech. *See id.* at 228, 110 S.Ct. 596. Writing for the plurality, Justice O'Connor concluded that the first two safeguards, requiring that any restraint imposed prior to judicial review can only be for a specified brief period and that expeditious judicial review must be available, are "essential." *Id.* As for the third requirement, the plurality concluded that it is unnecessary to require that the state bear both the burden of going to court and the burden of proof in court because, unlike the film exhibitor in *Freedman,* a potential licensee has "every incentive ... to pursue a license denial through court." *See id.* at 230, 110 S.Ct. 596 (plurality opinion).

■ In a concurring opinion, Justices Brennan, Marshall, and Blackmun agreed with the plurality that the first two requirements of *Freedman* were necessary for the licensing scheme to withstand constitutional scrutiny. *See id.* at 238–39, 110 S.Ct. 596 (Brennan, J., concurring). The concurring Justices were unable to join the plurality opinion because they disagreed with its statement that the third requirement was not necessary. *See id.* at 239, 110 S.Ct. 596. Whether or not the third *Freedman* safeguard is necessary, however, the plurality and concurring opinions make clear that without the first two safeguards, a scheme for licensing businesses that purvey sexually oriented speech falls short of the constitutional minimum. *See id.* at 228, 239, 110 S.Ct. 596.

■ Plaintiffs argue that the licensing ordinance fails to satisfy the first requirement of *Freedman,* namely, that any restraint imposed prior to judicial review must be of a specified brief duration. The licensing ordinance requires the City Administrator to approve the issuance of a license within thirty days after receipt of a complete application unless the Administrator finds the existence of one of ten conditions specified in the ordinance. If the Administrator denies a license, the applicant may appeal the denial to the City Council within ten days. Because the ordinance does not impose any time limit on the City Council's consideration of the appeal, plaintiffs argue, the ordinance fails the first prong of *Freedman.* Plaintiffs cite *Redner v. Dean,* 29 F.3d 1495, 1501 (11th Cir.1994), in which the Eleventh Circuit held that an administrative appeal without any time limit failed to satisfy *Freedman,* and *Augustine v. Township of St. Augusta,* Civ. No. 96–156, slip op. at 12–13 (D. Minn. June 12, 1997), in which this Court found that an ordinance permitting the city to delay the appeal process while the expressive activity was restrained likely violated the First Amendment.

This case is unlike *Redner* and *Augustine,* however, because the ordinance prevents the City Administrator from requiring a license during the pendency of an appeal. The appeal provision states that applicants have the right to appeal whenever the Administrator "requires an establishment ... to apply for a license, denies the issuance of a license, or suspends, or revokes a license." The filing of an appeal "stays the action of the City Administrator in requiring, suspending, or revoking a license until the City Council makes a final decision." Plaintiffs argue that the stay provision says nothing about the denial of a license and therefore an applicant whose license is denied may not conduct its business during the pendency of the appeal. Plaintiffs distinguish the denial of a license from the City Administrator's act of requiring a license, because in the latter .

circumstance, they argue, the issue is whether the business is required to be licensed, not whether the business meets the criteria for licensure. This argument confuses the act required to invoke a stay with the act which is stayed by an appeal. The stay provision does not exclude appeals taken from the denial of a license; instead, the stay takes effect upon the "filing of an appeal," which plainly includes the appeal of a license denial. Thus, if the City Administrator denies an application for a license and the applicants file an appeal, the stay provision will become operative. Plaintiffs point out that the stay provision does not stay the act of denying a license. It is true that the ordinance could have gone further and stayed license denials, which would essentially require the issuance of a license. The ordinance need not go so far, however, because it stays the Administrator's act of requiring a license. Any enforcement action undertaken to prevent the business from operating due to the lack of a license would necessarily involve requiring a license; it is irrelevant whether the applicants themselves concede, by the act of filing an application, that a license is required. The stay provision therefore precludes the City Administrator, during the pendency of an appeal to the City Council, from preventing a business from operating due to the lack of a license. The only period of time during which plaintiffs' speech is restrained, therefore, is the thirty days during which the Administrator considers the license application and any period (necessarily less than ten days) prior to the filing of an appeal.[4] This is sufficient to satisfy the first procedural safeguard of *Freedman*.

■ Plaintiffs next argue that the ordinance fails to provide for prompt judicial review. The City asserts that the ordinance complies with *Freedman* and *FW/*

*PBS* because all applicants have prompt access to the courts through writ of certiorari upon the denial, suspension, or revocation of a license. Plaintiffs contend that this procedure is insufficient because it fails to require a prompt judicial decision. There is a dispute among the circuit courts whether *FW/PBS* requires a prompt judicial decision or simply prompt access to judicial review. *Compare Baby Tam & Co. v. City of Las Vegas,* 154 F.3d 1097, 1101–02 (9th Cir.1998) (prompt judicial decision required); *East Brooks Books, Inc. v. City of Memphis,* 48 F.3d 220, 224–25 (6th Cir.1995) (same); *11126 Baltimore Boulevard, Inc. v. Prince George's County,* 58 F.3d 988, 999–1001 (4th Cir.1995) (en banc) (same) *with Boss Capital, Inc. v. City of Casselberry,* 187 F.3d 1251, 1255–57 (11th Cir.1999) (access to prompt judicial review sufficient), *cert. denied,* No. 99–1211, 2000 WL 49054 (March 20, 2000); *TK's Video, Inc. v. Denton County,* 24 F.3d 705, 709 (5th Cir.1994) (prompt judicial hearing sufficient); *Graff v. City of Chicago,* 9 F.3d 1309, 1324–25 (7th Cir.) (en banc) (common law writ of certiorari procedure sufficient); *Jews for Jesus, Inc. v. Massachusetts Bay Transp. Auth.,* 984 F.2d 1319, 1327 (1st Cir.1993) (access to judicial review sufficient). The Eighth Circuit has not addressed this issue.

■ As discussed above, in *FW/PBS* six Justices agreed that when a city seeks to impose a licensing requirement on a purveyor of sexually explicit speech, there must be the "possibility of prompt judicial review in the event that the license is erroneously denied." *FW/PBS,* 493 U.S. at 228, 110 S.Ct. 596. While the plurality speaks of the "possibility of prompt judicial review," however, it cites *Freedman,* which makes it clear that a prompt judicial determination is required. *See Freedman,* 380 U.S. at 58–60, 85 S.Ct. 734 (discussing the need for prompt judicial determination

---

4. Plaintiffs do not contend that these time limits fail to satisfy the requirement of a "specified brief period." *Cf. Redner,* 29 F.3d at 1500 (finding forty-five day period reason-

able); *Wolff v. City of Monticello,* 803 F.Supp. 1568, 1574 (D.Minn.1992) (noting that a ninety-day period is not unreasonable per se).

and citing with approval a scheme in which the judge must hand down a decision within two days after the hearing). A contrary interpretation renders this safeguard superfluous. The Seventh Circuit noted that "it is not clear why the Court in *Freedman* set out the apparent requirement that an ordinance such as this explicitly provide for prompt judicial review. A person always has a judicial forum when his speech is allegedly infringed." *Graff,* 9 F.3d at 1324. The requirement of prompt judicial review is only redundant, however, if it is interpreted to require mere access to a judicial forum. But *Freedman* and *FW/PBS* require more; they require a prompt decision. *See 11126 Baltimore Boulevard,* 58 F.3d at 1000 (noting that the Court invalidated the regulation at issue in *FW/PBS* despite the fact that judicial review of licensing decisions was available). As the Ninth Circuit noted, "without a decision, the most exhaustive review is worthless." *Baby Tam & Co.,* 154 F.3d at 1101–02.

Courts holding that mere access to judicial review is sufficient either apparently conclude that Justice O'Connor somehow relaxed this prong of *Freedman, see TK's Video,* 24 F.3d at 709, or else distinguish the censorship scheme in *Freedman* from the licensing provision at issue, *see Boss Capital, Inc.,* 187 F.3d at 1255–57. As already discussed, Justice O'Connor's opinion cannot reasonably be read to relax *Freedman*'s requirement of a prompt judicial determination. Were the Court to be writing on a clean slate, it might well find that the difference between the censorship scheme in *Freedman* and the licensing ordinance here justifies the conclusion that a prompt judicial determination is not a necessary safeguard in this context. Given the clear mandate of *FW/PBS,* however,

the Court is not free to disregard the requirement of a prompt judicial resolution. Accordingly, the Court rejects the City's argument that the mere availability of judicial review is sufficient under *Freedman* and *FW/PBS.*

Having determined that a prompt judicial resolution is required, the Court must next determine whether the ordinance or other law provides for such prompt resolution. The City contended at oral argument that enforcement of the ordinance is stayed throughout the appeal to the City Council and during subsequent proceedings in the Court of Appeals. If this were true, it would obviate the need for prompt judicial resolution because the ordinance would not act as a prior restraint on speech. *See 11126 Boulevard,* 58 F.3d at 1001 n. 18 (noting that "the County could avoid the constitutional problem engendered by its present scheme by permitting adult bookstores to operate until a judicial determination is rendered ....."). The stay provision does not so provide, however; instead, it quite clearly stays enforcement "until the City Council makes a final decision." Once the City Council renders a decision, therefore, the stay dissolves and plaintiffs are left to the judicial review provided by law.

In Minnesota, in the absence of statutory authority for a different proceeding, a party may obtain judicial review of a quasi-judicial decision only by petition for writ of certiorari to the Minnesota Court of Appeals. *See* Minn.Stat. § 606.01; *In re Haymes,* 444 N.W.2d 257, 259 (Minn. 1989).[5] If the writ is to issue, it must issue within sixty days after the party applying for the writ receives due notice of the proceeding sought to be reviewed. *See* Minn.Stat. § 606.01.[6] Thereafter, assuming

---

**5.** Three indicia characterize quasi-judicial actions: "(1) investigation into a disputed claim and weighing of evidentiary facts; (2) application of those facts to a prescribed standard; and (3) a binding decision regarding the disputed claim." *Minnesota Ctr. for Envtl. Advocacy v. Metropolitan Council,* 587 N.W.2d 838, 842 (Minn.1999). The Minnesota Court of Appeals has held that the actions of a city

council may be quasi-judicial and thus subject to review pursuant to writ of certiorari. *See In re Dakota Telecomms. Group,* 590 N.W.2d 644, 646–647 (Minn.Ct.App.1999).

**6.** Effective February 1, 1968, the Minnesota Rules of Civil Appellate Procedure superseded Chapter 606 of the Minnesota Statutes with respect to appellate practice and procedure.

no transcript is to be obtained,[7] the parties are allowed seventy days for briefing. *See* Minn. R. Civ.App. P. 131.01. Oral argument is scheduled after the filing of the first responsive brief (which is normally thirty days after the first brief is filed), and the parties are generally given one month's notice; there appears to be no time limit set upon when oral argument may be scheduled. *See* Rule 1, Special Rules of Practice for the Minnesota Court of Appeals. The Court of Appeals is required to render a decision in every case within ninety days after oral argument or after the final submission of briefs or memoranda by the parties, whichever is later, although the chief justice or chief judge may waive the ninety day limitation for good cause shown. *See* Minn.Stat. § 480A.08, subd. 3(a). Taken together, these rules establish a general timeline in excess of eight months for resolution of the proceedings, and this is assuming that no transcript is to be ordered, oral argument is scheduled one month after the filing of the first responsive brief, and no extensions are granted at any step along the way. Considering the length and elasticity of this time frame, the Court cannot conclude that this procedure is sufficiently prompt to comport with the requirement of *FW/PBS*. *See 11126 Baltimore Boulevard,* 58 F.3d at 1001 (finding 253 days to be too long); *East Brooks Books,* 48 F.3d at 225 (finding a potential delay of over five months to be too long). Because the licensing ordinance fails to satisfy the requirements of *FW/PBS*, the Court grants plaintiffs' motion for summary judgment on this issue.

> *See* Minn.Stat. § 606.01; *In re Pinkney,* 353 N.W.2d 676, 677 (Minn.Ct.App.1984). Rule 115.01 of the Minnesota Rules of Civil Appellate Procedure provides that "[t]he appeal period and the acts required to invoke appellate jurisdiction are governed by the applicable statute." In the absence of another applicable statute, § 606.01 continues to govern the time period for obtaining the writ from the Court of Appeals where review of a quasi-judicial decision is sought. *See Molnar v. County of Carver Bd. of Comm'rs,* 568 N.W.2d 177, 179 (Minn.Ct.App.1997); *In Matter of*

## 3. Severability

■ Having determined that the ordinance fails to comply with *FW/PBS,* the Court must determine whether any portion of the ordinance is severable. Severability is a matter of state law. *See Leavitt v. Jane L.,* 518 U.S. 137, 139, 116 S.Ct. 2068, 135 L.Ed.2d 443 (1996). The Minnesota statute governing this issue provides:

> Unless there is a provision in the law that the provisions shall not be severable, the provisions of all laws shall be severable. If any provision of a law is found to be unconstitutional and void, the remaining provisions of the law shall remain valid, unless the court finds the valid provisions of the law are so essentially and inseparably connected with, and so dependent upon, the void provisions that the court cannot presume the legislature would have enacted the remaining valid provisions without the void one; or unless the court finds the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

Minn.Stat. § 645.20. This provision governs severability with respect to municipal ordinances as well as state law. *See Chanhassen Estates Residents Ass'n v. City of Chanhassen,* 342 N.W.2d 335, 339 ,n. 3 (Minn.1984) (noting that municipal ordinances are construed according to recognized principles of statutory construction); *see also Krmpotich v. City of Duluth,* 474 N.W.2d 392, 397 (Minn.Ct.App.1991) (de-

> *Ultraflex Enters.,* 494 N.W.2d 89, 91 (Minn.Ct. App.1992); *Pinkney,* 353 N.W.2d at 677. Thus, it appears to the Court that the sixty-day period would apply in a case such as this, where no other statute or rule provides the time for review.

**7.** A transcript may take up to sixty days. *See* Minn. R. Civ.App. P. 110.02, subd. 2(a). Briefing does not start until delivery of the transcript. *See* Minn. R. Civ.App. P 131.01.

termining whether an invalid provision in a local zoning ordinance was severable under § 645.20), *rev'd on other grounds,* 483 N.W.2d 55 (Minn.1992). Under § 645.20, there is a presumption of severability "which is rebutted only if the court concludes the Minnesota legislature would not have enacted the valid portions without the void ones." *Bang v. Chase,* 442 F.Supp. 758, 770 (D.Minn.1977).

In this case, the Court need not look very far to determine whether the City Council would have enacted the licensing ordinance without any invalid portions. The ordinance itself expressly states that

> [i]f any section, sentence, clause or phrase of this Section is for any reason held to be invalid, such decision shall not affect the validity of the remaining portions of this Section. The City Council hereby declares that it would have adopted the Section and each subsection, sentence, clause, or phrase thereof, irrespective of the fact that any one or more sections, subsections, sentences, clauses or phrases be declared invalid.

Cannon Falls, Minn., Ordinance No. 188 § 3, subd. 20. The problem with this severability clause, however, is that the Court has not determined that a particular section or clause is invalid; rather, the Court has determined that the ordinance as a whole is invalid, not because of what it requires, but because of what it fails to provide. As a prior restraint on speech that lacks the required procedural safeguards, the licensing requirement is invalid.

The Court has carefully examined the ordinance to determine whether any sections are complete and capable of being executed apart from the licensing requirement itself. The Court has determined that Section 1 [8] and subdivisions 13,[9] 14,[10] 15,[11] and 18 [12] of Section 3 are severable because they regulate the conduct of certain sexually oriented businesses without regard to whether the businesses are licensed under the ordinance.[13] The remainder of the ordinance, however, sets forth requirements for obtaining a license or imposes regulations upon "licensees" or "licensed facilit[ies]." These provisions are inseparable from the licensing requirement itself, which the Court has determined to be an unconstitutional prior restraint on speech.[14] While the City argues generally that invalid provisions should be severed and the remainder of the ordinance upheld, the City has not specifically argued that any portion of the ordinance is enforceable in the absence of the *Freedman* safeguards. Accordingly, the Court concludes that the remainder of the ordinance is unenforceable.

8. Section 1 defines the various sexually oriented businesses which are subject to regulation.

9. Subsection 13 prohibits escort agencies from employing individuals under the age of 18.

10. Subsection 14 prohibits nude model studios from employing individuals under the age of 18 and further prohibits persons from appearing in a state of nudity in an area of such a studio that is visible to the public.

11. Subdivision 15 prohibits sexually oriented theaters and sexually oriented motion picture theaters from knowingly permitting individuals under the age of 18 to appear in a state of nudity on the premises.

12. Subdivision 18 provides for a fine and imprisonment upon conviction for "[a]ny person violating a provision of this Section." This provision is enforceable insofar as it is used to implement the remaining valid provisions of the ordinance.

13. Plaintiffs have not challenged any of the severable provisions, and the Court thus does not address their validity.

14. In particular, the Court has carefully considered whether the distance and tipping provisions are severable. As general restrictions that are theoretically separate from the licensing requirement, they could be severable; however, excising the language that limits their operation to licensed facilities would likely render them either overbroad or simply incomplete and incapable of execution.

## C. The Public Nudity Ordinance

While acknowledging that " 'few of us would march our sons or daughters off to war to preserve the citizen's right to see' specified anatomical areas exhibited at establishments like" Class Act, *City of Erie v. Pap's A.M.*, — U.S. ——, 120 S.Ct. 1382, 1393, 146 L.Ed.2d 265 (2000) (quoting *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 70, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976)), the Supreme Court has nonetheless recognized that nude dancing is a form of expression entitled to some First Amendment protection. *See Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 565–66, 581, 587–88, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991) (eight Justices taking this position). The public nudity ordinance therefore may not impermissibly infringe upon plaintiffs' right to engage in expressive nude dancing.

### 1. Overbreadth

■ Plaintiffs first challenge the public nudity ordinance on the ground that it is unconstitutionally overbroad. The First Amendment doctrine of overbreadth is an exception to the general rule that a person to whom a statute may constitutionally be applied cannot challenge the statute on the ground that it may be unconstitutionally applied to others. *See Board of Airport Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569, 574, 107 S.Ct. 2568, 96 L.Ed.2d 500 (1987). The purpose of this exception is to guard against the danger that the statute may chill the legally protected speech of those not before the Court. *See id.* A statute may be invalidated on its face only if the overbreadth is

"substantial," *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 503, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985), and this is particularly true where, as here, conduct and not merely speech is involved, *see Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973).

■ Measured against these principles, the public nudity ordinance is plainly not overbroad. Plaintiffs identify no examples of constitutionally protected speech which the public nudity ordinance might prohibit, other than, presumably, their own.[15] This is not surprising, because the public nudity ordinance contains an exception for persons appearing in a state of nudity in "any theatrical production performed in a theater by a professional or amateur theatrical or musical company which has serious artistic merit." The Eighth Circuit has held that a similar provision insulated a public nudity ordinance from a challenge on overbreadth grounds. *See Farkas v. Miller*, 151 F.3d 900, 905 (8th Cir.1998).[16] Plaintiffs claim that this exception does not save the ordinance because it demonstrates that the ordinance is aimed at suppressing their speech. *See Nakatomi Invs., Inc. v. City of Schenectady*, 949 F.Supp. 988, 998–999 (N.D.N.Y.1997) (holding that an ordinance targeted specifically at certain types of establishments was not content-neutral). This is not an overbreadth argument, however, and is more properly addressed in relation to plaintiffs' claim that the ordinance may not, consistent with the First Amendment, be applied to them. The Court therefore turns to a consideration of that claim.

---

**15.** In their complaint and their briefs, plaintiffs do not expressly argue that the public nudity ordinance may not constitutionally be applied to them, and instead limit themselves to arguing that the ordinance is overbroad. Shortly after the Court issued its decision in *Pap's*, however, plaintiffs submitted a letter containing legal argument that could be construed as raising an as-applied challenge. Similarly, plaintiffs' argument regarding the alleged content-based nature of the ordinance is more appropriately analyzed in the context of an as-applied claim. The Court thus addresses this issue in order to fully dispose of plaintiffs' claim.

**16.** The exception discussed in *Farkas* had a broader sweep than that contained in the City's ordinance because it applied to exhibits and performances in a "concert hall, art center, museum, or similar establishment" as well as theater performances. *See Farkas*, 151 at 902. Plaintiffs do not attempt to distinguish *Farkas* on this ground.

### 2. The Public Nudity Ordinance as Applied to Nude Dancing

In *Barnes v. Glen Theatre, Inc.*, a fractured Supreme Court rejected a First Amendment challenge to the application of a public nudity statute to dancers at a nude dancing establishment. *See* 501 U.S. at 567, 572, 582, 111 S.Ct. 2456 (five of eight Justices finding the statute constitutional). The plurality examined the statute under the four-part test enunciated in *United States v. O'Brien*, 391 U.S. 367, 376–77, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). Under *O'Brien*, a statute that regulates conduct having both "speech" and "nonspeech" elements is valid if the regulation is within the constitutional power of the government, it furthers an important or substantial governmental interest, the interest is unrelated to the suppression of free expression, and the incidental restriction on expression is no greater than essential to the furtherance of the interest. *See id.* The plurality concluded that the statute met these requirements because it furthered the state's interest in protecting societal order and morality. *See Barnes*, 501 U.S. at 568, 111 S.Ct. 2456.

Justice Scalia concurred in the judgment, but disagreed with the plurality that the statute should be analyzed under the *O'Brien* test. *See id.* at 572, 111 S.Ct. 2456. Instead, Justice Scalia concluded that as a general law regulating conduct, the statute should not be subject to First Amendment scrutiny at all. *See id.* Justice Souter also concurred in the judgment, and agreed with the plurality that the appropriate standard to apply was the *O'Brien* test. *See id.* at 582, 111 S.Ct. 2456. Justice Souter disagreed with the plurality, however, regarding the state interest at issue. *See id.* Justice Souter instead opined that the statute met the *O'Brien* test because the state had a substantial interest in counteracting increased prostitution, sexual assaults, and other negative secondary effects associated with adult entertainment establishments. *See id.* Both the plurality and Justice Souter

explicitly found that the statute's purpose, as applied to the nude dancing establishment, was unrelated to the suppression of free expression. *See id.* at 570–71, 585, 111 S.Ct. 2456.

When a splintered Supreme Court decides a case and no single rationale explains the result, " 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds ....' " *Marks v. United States*, 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977) (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n. 15, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (opinion of Stewart, Powell, and Stevens, JJ.)). The Eighth Circuit has held that Justice Souter's concurring opinion constitutes the narrowest grounds for the holding in *Barnes*. *See Farkas*, 151 F.3d at 904. Since oral argument in this case, however, the Supreme Court has issued a new decision examining an ordinance banning public nudity. *See Pap's*, —— U.S. ——, 120 S.Ct. 1382, 1387. This new case, like *Barnes*, did not produce a majority opinion. The Court must therefore determine whether *Pap's* represents a change in the law from Justice Souter's opinion in *Barnes*.

In *Pap's*, five Justices agreed that the four-part *O'Brien* test applies to government restrictions on public nudity as applied to nude dancing establishments. *See id.* at 1391, 1402 (five Justices taking this position). The reasoning of the four-Justice plurality tracks Justice Souter's *Barnes* concurrence in finding that such a statute may constitutionally be applied to nude dancing establishments in order to counteract the negative secondary effects associated with such establishments. *See id.* at 1394. Similarly, the plurality concluded, as did Justice Souter in *Barnes*, that a municipality need not conduct its own studies to determine whether such establishments are likely to have these effects. *See id.; Barnes*, 501 U.S. at 583–84, 111 S.Ct. 2456 (Souter, J., concurring). Although, based on his concurrence in

*Barnes,* one might have expected Justice Souter to join the *Pap's* plurality, he instead concurred in part and dissented in part. *See Pap's,* 120 S.Ct. 1382, 1406. While agreeing with the plurality that the *O'Brien* test applies, he disagreed with the plurality's view that the city had made a sufficient evidentiary showing of the harm it claimed to flow from the activity and the abatement of the harm that it expected from the restriction imposed. *See id.* at 1403. Justice Souter frankly acknowledged that his demand for such an evidentiary showing represented a change from his position in *Barnes. See id.* at 1405. Finally, Justices Scalia and Thomas would have dismissed the case for lack of jurisdiction on the ground that it had become moot. *See id.* at 1400. They nonetheless reached the merits of the case, and reiterated Justice Scalia's opinion in *Barnes* that the ordinance was valid as a general law regulating conduct and was thus not subject to heightened First Amendment scrutiny. *See id.*

Plaintiffs argue that the various opinions in *Pap's* produced no rationale that could fairly be considered the opinion of the Court under *Marks.*[17] This Court is not quite so pessimistic, however. In *Farkas,* the Eighth Circuit held that Justice Souter's opinion in *Barnes* supplied the necessary narrow grounds upon which at least five Justices agreed. *See Farkas,* 151 F.3d at 904. In so doing, the court concluded that the plurality's opinion was "broad enough to encompass the standard" Justice Souter articulated. *See id.* While the Court did not expressly acknowledge that Justice Scalia's opinion was similarly broad enough to encompass Justice Souter's reasoning, it must necessarily have recognized this because Justice Scalia supplied the requisite fifth vote in *Barnes.* As already noted, Justice Scalia's concurrence in *Pap's* follows the reasoning of his concurrence in *Barnes,*[18] and the plurality opinion in *Pap's* corresponds to Justice Souter's concurrence in *Barnes.* Accordingly, this Court may treat Justice Scalia's concurrence in *Pap's* as encompassing the *Pap's* plurality opinion. The plurality opinion thus constitutes the narrowest grounds for the resolution of the issues in *Pap's* and is therefore the holding of the case. As already discussed, the *Pap's* plurality essentially adopted Justice Souter's position in *Barnes. Pap's* therefore does not represent a change in the law from that articulated in *Barnes* and followed in *Farkas.*

Having determined the appropriate standard to apply, the Court is now prepared to address the merits of plaintiffs' claim. Before doing so, however, the

---

**17.** Plaintiffs also argue that a majority of the Court rejected the idea that a law prohibiting total nudity in dance productions may be justified on the basis of the need to prevent adverse secondary effects. This is simply incorrect. The four-Justice plurality and Justice Souter all agreed that the state's interest in combating negative secondary effects is an interest unrelated to the suppression of expression. *See Pap's,* —— U.S. ——, 120 S.Ct. 1382, 1394, 1402, 146 L.Ed.2d 265. While Justice Souter opined that the causal connection between requiring "pasties" and a "G-string" and the abatement of negative secondary effects was not immediately obvious to him, *see id.* at 1404 n. 2, he would not have invalidated the ordinance on that ground, *see id.* at 1406 (stating that he would remand the case to give the city an opportunity to make the required evidentiary showing).

**18.** Plaintiffs contend that Justice Scalia's opinion concerning the merits of the case is pure dicta because he would have dismissed the case for lack of jurisdiction. It would be more accurate to say, however, that Justice Scalia's comments concerning jurisdiction are dicta. Had his opinion that the case was moot commanded a majority of the Court, the Court would have dismissed the case and left the Pennsylvania Supreme Court's decision intact. *See id.* at 1399. Rather than dissenting from the plurality's disposition of the case, however, Justice Scalia concurred in the judgment, which reversed the opinion of the Pennsylvania Supreme Court. *See Pap's,* —— U.S. ——, 120 S.Ct. 1382, 1397, 146 L.Ed.2d 265. As such, his opinion regarding the merits of the case cannot be characterized as mere dicta. *See S.B.L. v. Evans,* 80 F.3d 307, 310 (8th Cir.1996) (explaining that statements necessary to a court's decision are not dicta).

Court addresses one final detail. Although this point may be obvious, the Court nevertheless finds it advisable to explain why it does not consider Justice Souter's opinion to supply the holding of the case, as it did in *Barnes*. Because Justice Souter would have demanded a more exacting evidentiary showing, he dissented from the Court's disposition of the case. *See Pap's*, 120 S.Ct. 1382, 1406. But *Marks* teaches that the holding of a fractured decision is the narrowest position taken by the Justices who concurred in the judgment. *See Marks*, 430 U.S. at 193, 97 S.Ct. 990. Because his resolution of the issue required him to dissent, Justice Souter's opinion regarding the necessary evidentiary showing does not supply a rationale for the judgment and cannot be considered the holding of the case.

Applying the *O'Brien* test, the Court finds that the public nudity ordinance does not violate the First Amendment. This ordinance is clearly within the constitutional power of the City, thus satisfying the first prong of *O'Brien*. In addition, it furthers a substantial state interest in preventing the negative secondary effects of nudity in adult entertainment. *See Pap's*, 120 S.Ct. 1382, 1394–96; *Barnes*, 501 U.S. at 584–85, 111 S.Ct. 2456. As *Barnes* and *Pap's* make clear, a city may rely on evidence that it reasonably believes to be relevant to the problem. *See Pap's*, 120 S.Ct. 1382, 1396; *Barnes*, 501 U.S. at 584–85, 111 S.Ct. 2456. The City did so here; it reviewed studies from other cities, including Minneapolis and St. Paul, and made specific findings that the presence of nude dancing establishments is likely to have an adverse impact on the City.

Plaintiffs claim that these studies are irrelevant because the City's own experience proves that there are no adverse secondary effects associated with nude dancing establishments that differ in kind or degree from those associated with licensed liquor establishments. To support this claim, plaintiffs compare the record of police calls to Peeler's Bar with records of police calls to other licensed liquor establishments in the City. The records do not support plaintiffs' position, however. While they reveal that all these establishments generate a regular stream of calls relating to accidental tripping of the alarms, reports of suspicious activity, bad checks, and possible fights, the records relating to Peeler's Bar report that in November 1998, a male patron assaulted a dancer and subsequently was charged with fifth degree criminal sexual conduct. No other licensed liquor establishment in the City had any incidents that resulted in criminal sexual conduct charges. Insofar as plaintiffs may be contending that sexual assault does not differ in kind or degree from the average bar fight, the Court rejects this contention. Moreover, this is exactly the type of adverse secondary effect which justifies the ordinance's incidental restriction on plaintiffs' speech. *See Pap's*, 120 S.Ct. 1382, 1394. Thus, the police records support rather than undermine the City's position that the adverse secondary effects associated with nude dancing establishments justify the regulation it seeks to impose.

The third prong of *O'Brien* requires that the governmental interest be unrelated to the suppression of expression. Although *Barnes* and *Pap's* both make clear that the state's interest in combating secondary effects is not related to the suppression of expression, plaintiffs claim that the exception for theatrical productions demonstrates that the ordinance is an attempt to restrict expression based on its content. In *Farkas*, the Eighth Circuit rejected a similar argument. *See Farkas*, 151 F.3d at 904. Rather than calling the validity of the law into question, the Eighth Circuit held that the exception "counsel[ed] in favor of its constitutionality," because the secondary effects rationale would be questionable if applied to classes of productions not readily comparable to adult entertainment. *Id.* at 904. Simply because the City has exempted from the ordinance's reach those types of entertainment unlike-

ly to cause adverse effects, therefore, does not render the City's asserted interest content-related. *See Pap's*, 120 S.Ct. 1382, 1393 (explaining that there is nothing objectionable in a city's recognition that one specific type of public nudity, namely, nude erotic dancing, is particularly problematic).

Finally, *O'Brien* requires that the ordinance restrict no more speech than necessary to further the governmental interest. At oral argument, the City asserted that the addition of "pasties" and a "G-string" is sufficient to comply with the public nudity ordinance, and plaintiffs did not dispute this interpretation of the statute. As numerous courts have concluded, this requirement could hardly be more minimal. *See Pap's*, 120 S.Ct. 1382,1396; *Barnes*, 501 U.S. at 572, 587, 111 S.Ct. 2456; *Farkas*, 151 F.3d at 905. Accordingly, the Court concludes that *O'Brien* is satisfied and the ordinance is a constitutional limitation on nude dancing. Defendant's motion for summary judgment on this claim is therefore granted.

## D. The Restaurant Provision

 The City contends that plaintiffs are subject to the licensing ordinance requirement that "initial" liquor licenses issued after the effective date of the ordinance, which was January 3, 1986, can only be issued to restaurants. Plaintiffs contend that Minnesota law exempts them from this regulation.

Minn.Stat. § 340A.413 regulates the number of licenses cities of various sizes may issue. Subdivision 6 provides that a validly issued license is not rendered illegal by virtue of annexation of territory to a city. The Minnesota Attorney General has opined that while the predecessor of this statute protected licenses from becoming invalid where annexation resulted in an excess number of licenses within a city, it

did not protect licensees from having to comply with other legitimate regulations. *See* Minn. Op. Att'y Gen. 218g–1 (May 2, 1977). While both sides attempt to use this reasoning to their advantage, the Court agrees with the City that § 340A.413 is no bar to requiring plaintiffs to comply with the restaurant requirements.[19] This conclusion does not resolve the issue, however, because the issue is not whether the City has the power to require plaintiffs to comply with the city's liquor license regulations. Instead, the issue is whether this particular regulation applies to plaintiffs. To answer this question, it is necessary to examine the language of the licensing regulation itself.

The pertinent provision reads as follows:

> When an on-sale liquor license on premises licensed on the effective date of this Subdivision is allowed to expire, either (a) without a successor in interest to such licensed premises having duly and timely filed (prior to such expiration) an application for a license describing such premises, or, (b) without the then-present licensee having duly and timely (as provided in the City Code) filed an application for a renewal license, then, any subsequent application for an on-sale liquor license on the same premises shall be an application for an initial license subject to [the restaurant requirement].

Cannon Falls, Minn., Code § 5.45, subd. 3. This provision does not require plaintiffs to have held a license from the City on the effective date of the ordinance; by its terms, it applies to "premises licensed on the effective date of this Subdivision," not "premises licensed *by the city* or *under this chapter* on the effective date of this Subdivision." It is true that the provision goes on to state that the then-present licensee must have duly and timely filed an

---

**19.** Plaintiffs argue that § 340A.413 renders any subsequent license issued to them a "renewal" as a matter of law. This argument ignores that "renewal" may have different meanings in different contexts. The Attorney General's Opinion indicates that licenses are not ineligible for renewal simply because renewal will result in an excess number of licenses within the city; this has nothing to do with whether a new license is an "initial" license or a renewed license within the meaning of a particular regulation.

application for a renewal license, with "duly and timely" being defined in reference to the City's Code. The provision does not require that the application be made to the City, however, but only that it be filed duly and timely as defined in the City's Code. There is no suggestion that plaintiffs' yearly application for a renewed license, when measured according to the City's Code, was ever untimely filed. Thus, because plaintiffs were licensed on the effective date of the subdivision and have otherwise complied with subdivision 3, the Court concludes that their license is not an "initial license" and they therefore need not comply with restaurant provision. The Court therefore grants plaintiffs' motion for summary judgment on this claim.

## ORDER

Based on the submissions of the parties, the arguments of counsel and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's motion for summary judgment [Docket No. 23] is **GRANTED** in part and **DENIED** in part;

2. Defendant's motion for summary judgment [Docket No. 20] is **GRANTED** in part and **DENIED** in part;

3. Count III (threatened denial of a liquor license) of plaintiffs' complaint is **DISMISSED** as moot;

4. Count II (unconstitutionality of public indecency ordinance) of plaintiffs' complaint is **DISMISSED WITH PREJUDICE**;

5. The Court hereby **DECLARES** that, with the exception of the severable provisions identified in the text of this Order, Cannon Falls Ordinance No. 188 is an unconstitutional prior restraint in violation of the First Amendment. Defendant is permanently **ENJOINED** from enforcing Cannon Falls Ordinance No. 188 against plaintiffs;

6. The Court hereby **DECLARES** that plaintiff Lounge Management, Ltd. is not required to comply with Cannon Falls City Code § 5.45, subd. 4 in order to obtain renewal of its liquor license;

7. Defendant's counterclaim [Docket No. 14] is **DISMISSED WITHOUT PREJUDICE**; and

8. Any and all remaining claims are **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**